[Birmingham Railway & Electric Co. v. Birmingham Traction Co.]

# Birmingham Railway & Electric Co. v. Birmingham Traction Co.

*Bill in Equity for an Injunction.*

1. *Appeals; when returnable; recital in certificate or bond immaterial.*—Since the statute (Code of 1896, § 437) fixes the time within which an appeal is returnable to the Supreme Court, a conflict in the recital of the certificate of appeal and of the appeal bond, as to the term of the court to which the appeal was returnable, is immaterial and does not authorize the dismissal of the appeal.

2. *Same; delay in filing the transcript; when appeal not dismissed.* Where, before the expiration of twenty days from the date of an appeal, the then pending term of the Supreme Court adjourns, delay in filing the transcript until the next term of the court is not cause for dismissal of the appeal, where such delay is shown not to have been prejudicial to the appellee.

3. *Street railway company; right to construct trolley wire across another street railway without compensation.*—Where, under its charter and a license granted by a city prior to the construction of an electric road, a street railway company, operated by steam, had authority to operate its road by electricity, the undertaking of said railway company to exercise such right by converting its system of steam power into that of electric power, by erecting its trolley wire across the later road without first condemning the right of way or making compensation to it, is not violative of the constitution guaranteeing that property can not be taken until just compensation be first paid; and such railway company cannot be enjoined by the electric road subsequently constructed, from exercising this right.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellant, the Birmingham Railway & Electric Company, against the appellee, the Birmingham Traction Company; and prayed for an injunction restraining the defendant, its officers and agents, from erecting or causing to be erected, an over-head trolley wire across the trolley wire of the

complainant at Eighth Avenue and 24th Street in the city of Birmingham. The averments of the bill are sufficiently stated in the opinion.

Upon the filing of the bill, a temporary injunction was issued. The averments of the answer material to the questions presented on the present appeal are sufficiently stated in the opinion. The defendant moved to dismiss the bill for the want of equity, and also moved the court to dissolve the injunction for the want of equity in the bill and on the denials of the answer.

Upon the submission of the cause upon these motions, the chancellor overruled the motion to dismiss the bill for the want of equity and dissolved the injunction on the denials of the answer. From this decree dissolving the injunction the complainant appeals, and assigns the rendition thereof as error.

WALKER, PORTER & WALKER, for appellant.—The court erred in dissolving the injunction on the denials of the answer.—*Bir. Traction Co. v. Birmingham R. & E. Co.*, 121 Ala. 475, and authorities cited.

ALEX T. LONDON and JOHN LONDON, *contra.*—The court properly dissolved the injunction upon the denials of the answer.—*H. A. & B. R. R. Co. v. Bir. Un. Railway Co.*, 93 Ala. 505.

The bill in this case should have been dismissed.—Code of 1896, § 437; *Capehart v. Granite Mill Co.*, 97 Ala. 353; *Bayzer v. McMillan Mill Co.*, 105 Ala. 395.

TYSON, J.—This cause was submitted on a motion to dismiss the appeal, and, if that is overruled, then upon its merits.

The appeal and *supersedeas* bond was filed on the 1st day of June, 1898. The certificate and the notice of appeal recite that the appeal was taken to the present term of this court. The *supersedeas* bond recites that complainant "has this day applied for and obtained an appeal, returnable to the next term (1898) of the Supreme Court." Under our decisions, it can make no difference what the recitals of the certificate of appeal or bond were, the appeal was returnable to the then term of the

court.—*Collier v. Coggins,* 103 Ala. 281; *Capehart v. Granite Mills,* 97 Ala. 353.

Section 437 of the Code required this appeal to be made returnable to the first Monday of the term next, after the expiration of twenty days from the date of the appeal, towit, the 27th day of June, 1898. It appears, however, that the court adjourned on the 23d day of June; and this is offered as an excuse for not filing the transcript until the 6th day of December following, being the first day upon which the case could have been called, under the rules of this court. The rule on this question is as follows: "Upon satisfactory excuse being shown for the delay, the court may, in its discretion, permit the transcript to be filed, and the cause docketed, for the first time, after the adjournment of the term to or during which the appeal is returnable, upon such terms as the court may impose." It does not appear that the appellee was, and indeed it is inconceivable how it could have been, prejudiced by the delay, in not filing the transcript at an earlier date. The motion to dismiss the appeal must be overruled.—*Collier v. Coggins, supra.*

This brings us to a consideration of the merits of the controversy, which is presented by this appeal from the decree of the chancellor dissolving the injunction, sued out by complainant against the respondent, upon the denials in the answer. It appears from the averments of the bill that complainant was operating, at the time of its filing, and had been for a long time prior thereto, a street railway, using electric power, along and over certain streets in the city of Birmingham. That respondent was also operating a street railway upon certain streets, using steam power, whose tracks crossed the tracks of complainant's line at the intersection of Eighth Avenue and Twenty-fourth Street. It is averred in the bill, that respondent proposes to convert its road at the point of intersection into an electric road, and to this end, has a large force of men at work, near this point, engaged in erecting poles, wires, etc. on each side of, and within a short distance of complainant's railroad tracks; and complainant believes and alleges that respondent will erect and place its trolley wires across complainant's

trolley wire within a short space of time, without giving to it any notice, and obtaining its consent; that respondent has, without its consent, already crossed two of its tracks at another place.

The bill further alleges that the erection of an overhead trolley wire, at the point above specified, will greatly injure and damage the complainant in the enjoyment of its franchise, by destroying the alignment of its trolley wire, thereby causing its trolley poles and wheels to leave the trolley wire, thus breaking complainant's span, guy or stay cables, causing the trolley wire to lower or sag to short circuit or ground the current of electricity, which would necessarily stop all of its cars, while the current was so short circuited or grounded; that as a result of the poles leaving or being displaced from the trolley wire, the cross arms and poles, to which the span or guy wires are attached, would likely fall on complainant's cars, containing passengers, thereby endangering their lives, and the lives of persons and animals upon the street at that point. The bill alleges as a further element of injury to complainant's enjoyment of the franchise, that the trolley wire about to be erected by respondent would be so defective, as to interfere with the electric current used by it, by creating frequent short circuits of the current, thereby impeding the operation of its cars, its traffic, and increasing its schedule time between the termini of its line of road; and injuriously affecting the delicate machinery in the power house, from which its supply of electric current is drawn; and, further, that in case an uninsulated or defective overhead trolley wire is erected, it would have a tendency to intermix the electric currents used by complainant and respondent, and would give the latter an undue advantage by reason of its being able to draw a supply of current from the trolley wire of complainant, and would work a hardship upon complainant by having its supply of current drawn away from its cars and used by cars of respondent.

In the concluding paragraph of the bill it is averred, that respondent has not offered to pay complainant any compensation or damages, for the right to cross its track

and trolley wire with the trolley wire which it is about to construct and erect, and that respondent has taken no steps to condemn to its use the right of way across complainant's track and trolley wire.

In view of the fact, that appellant's counsel, in their brief, rest their entire contention for a reversal of the decree dissolving the injunction, upon an alleged defect in the answer, in respect to this concluding paragraph, we will only set forth such averments contained in the answer, as are pertinent to a decision of the question thus presented for consideration and decision. These averments are that respondent's assignors owned and operated the line of street railroad, at the point of intersection, complained of in the bill, long before the complainant constructed its track and erected its trolley wire across the track belonging to the respondent; and that respondent or the corporations whose rights and franchises it acquired, a long time before the line being operated by complainant was built or projected, had full power and authority under its charter, and by the license and consent of the municipal authorities of the city of Birmingham, to equip and operate its road by means of electricity, which was well known to the officers and agents of complainant. The specific averments relating to the concluding paragraph are in the following language: "Respondent admits that it has not offered to pay to complainant any compensation for stringing its trolley wire above its own right of way, acquired by its assignor long before the complainant had any rights at that place, and respondent is advised and believes and upon such advice and belief avers, that it was not incumbent upon this respondent to make such offer." It must be conceded from this averment, that the averments in the concluding paragraph of the bill that respondent has not offered to pay complainant any compensation for the right of way across its track and trolley wire, and has taken no steps to condemn to its use such right of way, are true. The averment of the answer is a mere denial by respondent predicated upon its priority of right in point of time, over the street at the point in controversy, of its liability to compensate complainant for a right of

23

way. And upon the question of prior occupancy by respondent of the street there appears to be no serious controversy. While the bill avers nothing specifically as to this, no legitimate inference to the contrary can, by the rules governing the construction of pleadings, be drawn. We have, then, the sole question to deal with, whether or not the respondent in undertaking to erect its trolley wire, along its own right of way acquired prior to the construction of the road by respondent or its assignors, was violating that clause of the constitution guaranteeing to complainant that its property shall not be taken until just compensation be first paid.

In the absence of any objection interposed by the city to the maintenance and use of the respective structures of complainant and of respondent, it will be presumed that the privilege of occupying the streets as exercised by them both is acquiesced in by the municipal authorities. *H. A. & B. R. R. Co. v. B. U. R'y Co.*, 93 Ala. 505. Indeed, it appears from the answer that respondent was erecting its wires for the purpose of converting the power by which its cars were being propelled, under compulsion of the city authorities, and by their express license. So, then, each of these companies were in the lawful exercise of the respective franchises when the respondent began its work of converting its system of steam power into that of electric power—having the right, if the averments of the answer are true, from the date of its corporate existence to exercise its franchise by the use of electricity.

The mere postponement by respondent of the exercise of this right, which it is averred was known to complainant, cannot, in our opinion, preclude it from exercising it, and invest in the complainant such a superior interest in the use of the street, which it acquired subsequently to the acquisition by respondent of the right to use electricity, as that entitles it to demand compensation for such use. Whether the complainant would be entitled to compensation, had it acquired a prior servitude is not involved, and we do not decide it.

Decree affirmed.