## Campbell *v.* The State.

### *Murder.*

(Decided April 10, 1913.   62 South. 57.)

1. *Appeal and Error; Statutes Regulating; Rules of Court.*—Sections 6243-6266, Code 1907, regulating appeals in criminal cases do not impinge upon the power of the Supreme Court to adopt reasonable rules regulating such appeals, and the statute must be read in connection with the rules adopted by the court.

2. *Same.*—The right of appeal in criminal cases, is a substantial right, although wholly statutory, as is shown by sections 6249, 6250, 6255, and 6264, Code 1907.

3. *Same; Compliance.*—Under section 6255, Code 1907, and rule 42, Supreme Court Practice, where accused was convicted and sentenced May 4, 1912, and prayed an appeal, and his bill of exceptions was presented to the trial judge, and signed within the statutory period, and the first call of the division in which .the court of conviction is placed, after the conviction, occurred on May 27, and this court adjourned on June 30, before the bill of exceptions was signed, and the next call of the division was had on January 30, 1913, and the

[Campbell v. The State.]

transcript was filed in this court on that day, it was properly filed, and the appeal will not be dismissed.

4. *Same; Manner of Taking; "Taken."*—Within the statute in a criminal case, an appeal is taken when defendant expresses a desire to take one, and has complied with the statutory requirement.

5. *Same; Appointment of Counsel.*—The provisions of section 7839, Code 1907, does not authorize the appointment by the trial court of counsel to represent a defendant indicted for a capital felony, in the Supreme or Appellate Court.

6. *Witnesses; Corroboration.*—Where a witness for the state testified to an inculpatory statement made by defendant at a specified time and place, it was competent to permit a third person to testify to circumstances corroborating the testimony of the state's witness as to the presence of such witness and defendant at such time and place.

7. *Same; Impeachment.*—A witness cannot be impeached by questions on the cross disclosing that the witness has been indicted for an offense involving moral turpitude.

8. *Appeal and Error; Harmless Error; Evidence.*—Where the defendant was jointly indicted with several other persons and obtained a severance, any error in permitting a witness to testify that he knew what defendant meant when asking whether the witness had said anything about what a third person had told him, was not prejudicial, as no effort was made by the state to show what the witness knew or understood.

9. *Charge of Court; Ignoring Evidence.*—Charges directing an acquittal on an hypothesis other than a due consideration of all the evidence on the issue of guilt vel non, are properly refused for ignoring evidence.

10. *Same; Ignoring Issues.*—Where the theory was that defendant was a conspirator in the homicide, and under the evidence he might have been guilty without actually participating in the homicide, the charge asserting that the burden was on the state to prove that defendant committed or participated in the commission of the crime, ignored one of the issues, and was properly refused.

11. *Same; Weight and Sufficiency.*—It is not error to refuse requested instructions affirming that there is no evidence in support or in refutation of an issue, or elements of issues involved in the trial.

12. *Same; Reasonable Doubt.*—A charge asserting that if on considering the whole evidence there remains one fact in the evidence that the jury cannot reconcile with the guilt of the defendant, they must acquit, and that the jury must be satisfied clearly, fully and conclusively, and to a moral certainty, before they can convict, exacts a too high degree of the conviction of guilt in the minds of the jury to justify a conviction, and were, therefore, properly refused.

13. *Same; Abstract.*—Charges are abstract and properly refused when based upon matter not in evidence.

14. *Same; Confusion.*—A trial court will not be put in error for refusing instructions which are calculated to confuse or mislead the jury.

[Campbell v. The State.]

APPEAL from St. Clair Circuit Court.

Heard before Hon. J. E. BLACKWOOD.

Will Campbell was convicted of murder in the first degree, and he appeals. Affirmed.

The facts relative to the motion and evidence sufficiently appear in the opinion. The following charges were refused to the defendant:

"A. If there is one single fact proved to the satisfaction of the jury which is inconsistent with defendant's guilt, this is sufficient to raise a reasonable doubt, and the jury should acquit"

C. Same as A.

"F. If, after a consideration of all the evidence, or any part thereof, the jury believe there is a probability of defendant's innocence, it is your duty to acquit.

"G. If, upon a consideration of all the evidence, there is a reasonable doubt arising out of any part of the evidence, the jury should find the defendant not guilty."

"D. The burden is on the state to prove to your satisfaction, and to a moral certainty, that a crime has been committed, and also that the defendant committed, or participated in the commission of, such a crime; and if, under the evidence, there exists in your mind a reasonable doubt as to whether the state has met the burden of proof which the law requires, in either of said respects, it will be your duty to find a verdict of not guilty."

"I. If, upon considering the whole evidence, there remains one fact or circumstance in the evidence that you cannot reconcile with the defendant's guilt, it will be your duty to acquit.

"J. A witness who gets a part or all of a reward offered for the arrest and conviction of the defendant, such fact goes to his credibility, and it is for the jury

[Campbell v. The State.]

to say the amount of credence, if any, they give such witness.

"K. The jury must be satisfied clearly, fully, and conclusively, and to a moral certainty, before they can convict."

"N. If you are not satisfied beyond all reasonable doubt and to a moral certainty, and to the exclusion of every other reasonable hypothesis but that of the guilt of defendant Campbell, then you should find him not guilty, and it is not necessary to raise ·a reasonable doubt that the jury should find from all the evidence a probability of defendant's innocence, but such doubt may arise even when there is no probability of his innocence from the testimony; and if the jury have not an abiding conviction to a moral certainty of his guilt, it is your duty to acquit."

O. Based on a belief or conviction of the jury that would cause them to act upon such conviction in matters of the highest concern and importance to their own interest.

JOHN W. INZER, and INZER & INZER, for appellant. Counsel insist, on motion to dismiss, that the transcript was filed on the first day of the call of the division after the time for the signing of the bill of exceptions had expired, and that therefore, the motion should be overruled.—*Kimbrell v. Rogers,* 90 Ala. 339; *Martin Mach. Wks. v. Miller,* 132 Ala. 633; *White v. State,* 134 Ala. 193. Counsel discuss the evidence and the refused charges with the insistence that error prejudicial to defendant was committed by the trial court, and that a reversal should follow, but they cite no authority in support of their contention.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. In support

of the motion to dismiss the appeal counsel rely upon the case of *Swain v. State,* 7 Ala. App. 5, and authorities there cited. On the merits, counsel insist that the state's theory of conspiracy was supported by competent evidence, and that the court properly admitted the testimony of the witness McLemore.—*West v. State,* 168 Ala. 1; *Collins v. State,* 138 Ala. 57; *Johnson v. State,* 87 Ala. 39. These statements were declarations by the accused himself, and were properly admitted.—*Henry v. State,* 107 Ala. 22; *Johnson v. State,* 87 Ala. 39; *Campbell v. State,* 23 Ala. 44. The statements were also properly admitted as confessions, an adequate predicate having been laid.—*King v. State,* 40 Ala. 314; *Dodson v. State,* 86 Ala. 60; *Shields v. State,* 104 Ala. 35; *Bush v. State,* 136 Ala. 85. Objections to the statement of the witness Wade came too late.—*Downey v. State,* 115 Ala. 108; *Stowers F. Co. v. Brake,* 158 Ala. 639. It is only the conviction of an offense involving moral turpitude that may be offered to impeach a witness.—Sec. 4009, Code 1907; *Gordon v. State,* 140 Ala. 29. Counsel discuss refused charges, but without citation of authority.

DE GRAFFENRIED, J.—The spirit of the law is stronger than its letter, but we think that under both the letter and the spirit of our laws the motion to dismiss this appeal must be overruled.

1. Articles 1, 2, and 3, of chapter 162 of the Code of 1907, being sections 6243-6266 of said Code, are designed to regulate the matter of appeals and the granting of writs of error in criminal cases, and are intended, except as otherwise shown in said Code, to completely cover said subjects. There is nothing in any of the said articles which in any way impinges upon the power of this court to adopt reasonable rules to regulate appeals

in such cases, and, of course, said articles are to be read in connection with the rules of this court.

When a defendant is indicted for a capital offense, and is unable to employ counsel, the trial court is required to appoint not exceeding two attorneys to represent him in *that* court.—Code 1907, § 7839. The above section does not authorize the trial court to appoint counsel to represent a defendant who is indicted for a capital offense in this court, or in the Appellate Court, and there is no statute which requires a trial court to appoint counsel to represent, in the trial court, any defendant who stands indicted in that court for any offense for which he may not be punished capitally.

Under the provisions of an act entitled, "An act to provide bail pending an appeal in all felony cases where the defendant is sentenced to the penitentiary for a term of five years or less," approved April 22, 1911 (Pamp. Gen. Acts, 1911, p. 626), a defendant may, in such a case, be released on bond, provided he is able to make the necessary bond, and remain out of jail, in the custody of his bondsmen, pending his appeal. In many such cases the defendants are, of course, unable to make the required bond, and such defendants, as well as other defendants in felony cases, must necessarily remain in jail pending their appeals. Many such defendants have no counsel, and in grave cases they are frequently and properly kept in isolated cells, and if they are permitted to see any one, the interview is granted through the grace, and probably within the hearing of, the jailer. It must therefore, at times at least, occur that a defendant who has been convicted of a grave felony can do *nothing* to bring his case to this court for review except, when brought in to be sentenced by the trial judge, to *pray* an appeal. For this reason section 6249 of the Code provides that *where any question of*

*law is reserved* in a case of felony, and it shall be made known to the court that the defendant desires to take an appeal to the Supreme Court, judgment must be rendered against the defendant, but the execution thereof must be suspended pending the appeal. For the same reason section 6250 provides that when *such question* is *reserved* in a case of misdemeanor, and it shall be made know to the court that the defendant desires to take an appeal to the Supreme Court, judgment must be rendered on the conviction, but the execution thereof must be suspended pending the appeal, etc.

For the same identical reason section 6255 of the Code provides that when the execution of the judgment of conviction has been suspended, or an appeal has been taken, in a criminal case, "it is the duty of the clerk of the court in which the case was tried to make out a full and accurate transcript of the record, attach his certificate thereto, and transmit it to the clerk of the Supreme Court within twenty days thereafter; but when time is allowed for signing a bill of exceptions, such transcript must be made out and forwarded within twenty days from the signing of such bill of exceptions, or, if such bill is not signed and filed, such transcript must be made out and forwarded within twenty days after the expiration of the time so allowed."

For the same identical reason section 6264 of the Code provides that, in criminal appeals, "no assignment of errors or joinder in errors, is necessary; but the court must consider all questions apparent on the record or reserved by bill of exceptions, and must render such judgment as the law demands."

A defendant who has taken an appeal from the judgment of conviction of a trial court, and who is in jail, is frequently helpless, and he is also in custodia legis.

[Campbell v. The State.]

While the right to appeal is purely a creature of our statutes, the Legislature, by adopting the above provisions of our Code, clearly indicates the legislative purpose that such right shall not, in any criminal case, become a mockery, but that the right shall be substantial, and that this court shall see to it that a defendant who has been convicted in a criminal case, and who has reserved a question of law for the consideration of this court, and who prays an appeal, shall be accorded the privilege of having the legal questions presented by his record properly passed upon. "An appeal is 'taken,' within the meaning of our statute, when the party desiring to prosecute it has complied with the conditions upon which the law gives the right."—*Kimbrell v. Rogers,* 90 Ala. 339, 7 South. 241.

2. In the instant case the defendant was convicted of murder in the first degree, and was, on the 4th day of May, 1912, sentenced by the trial court to the penitentiary for life. The defendant, having reserved certain questions of law for the consideration of this court, on the said day, at the time of his said sentence, prayed an appeal to this court. Under the law the defendant had 90 days within which to present to the presiding judge his bill of exceptions, and under the law the presiding judge had 90 more days within which to sign the bill of exceptions. The defendant, in fact, presented his bill of exceptions to the presiding judge on June 23, 1912, about a month and a half after praying the appeal, and the presiding judge signed the bill of exceptions on September 6, 1912, which was less than 90 days after it had been presented to him for his signature. The first call of the defendant's division, after his conviction, in this court occurred on May 27, 1912, 22 days after his said conviction. This court adjourned, by operation of law, on the last day of June, 1912, after the defendant

had presented to the presiding judge the bill of exceptions, but long before it was signed by said judge. The *next* call of the defendant's division was had in this court during the week commencing January 13, 1913, and the transcript in this case was filed in this court before noon of that day. Under the statute—section 6255 of the Code—above quoted, it was the duty of the clerk of the trial court to forward, within 20 days after the presiding judge signed the bill of exceptions, the transcript in the defendant's case to this court, but the transcript was filed in this court at the time above stated. Under the above facts there has been no discontinuance of the defendant's case. Rule 42 of this court provides that "upon satisfactory excuse being shown for the delay, the court may, in its discretion, permit the transcript to be filed and the cause docketed for the first time, after the adjournment of the term to, or during which the appeal is returnable, upon such terms as the court may impose." Under this rule the defendant's transcript was properly filed. The transcript was here on Monday, the first day of the week of the call of the defendant's division next after the signing, by the presiding judge, of the defendant's bill of exceptions — *Collier v. Coggins,* 103 Ala. 281, 15 South. 578.

The cases of *Sears v. Kirksey,* 81 Ala. 98, 2 South. 90, and *Winthrow & Gordon v. Woodward Iron Company,* 81 Ala. 100, 2 South. 92, which announce a view contrary to that announced in *Collier v. Coggins, supra,* were decided *before* the adoption of the above quoted rule by this court, and are therefore not in point.

Section 2870 of the Code provides that: *"Unless otherwise provided,* an appeal to the Supreme Court, if taken in vacation, is returnable to the next ensuing term; but if taken during the term, must be made returnable to the first Monday of the term next after the

expiration of twenty days from the date of the appeal."
The above italics are ours, and are placed in the above
section for the purpose of directing attention to the
fact that, even in civil cases, there is no conflict what-
ever between the above-quoted rule of this court and
the above-quoted statute.

Certainly, if the defendant in a criminal case is to
be held to the same rules which are applicable to civil
cases, as to the time when his appeal is returnable, then
in this case, as the bill of exceptions was not signed
until after the adjournment of the term to which his ap-
peal was returnable, but as his transcript was filed be-
fore noon of the first day of the week of the call of his
division next after the bill of exceptions was signed by
the presiding judge, the defendant's appeal should not
be dismissed.

Said section 2870 of the Code is not only so worded
as to authorize this court to adopt the above-quoted
rules, but said section and said rule were construed in
connection with each other in *Collier v. Coggins, supra;*
and as so construed and considered were both brought
forward into all of our succeeding Codes, which amount-
ed to a legislative affirmation of the rule declared in
said *Collier v. Coggins, supra.*

Section 2887 of the Code provides that an appeal must
not be deemed or treated as discontinued, or as having
otherwise lost its force, unless the appellee shall duly
move for a discontinuance after legal cause for discon-
tinuance has occurred. That section of the Code was
also in existence when the above decision of *Collier v.
Coggins* was rendered by this court, and it, too, has
been brought forward into our succeeding Codes with
that decision of our court resting upon it. The effect
of the decision in *Collier v. Coggins* was that this court
would not hold that a legal cause for a discontinuance

existed, although the transcript was filed and the cause docketed for the first time after the adjournment of the term to or during which the appeal was returnable, provided the appellee possessed a satisfactory excuse for the delay; and, as section 2887 of the present Code was brought into that Code from our previous Codes without change of phraseology, the opinion of the court in said case of *Collier v. Coggins* is to be read into said section, and forms a part of it.

This court certainly has the power to determine when, in each case that comes before it, a legal cause for a discontinuance has occurred, or when, in a particular case, an appeal has lost its force, and in *Collier v. Coggins, supra,* it is clearly determined that, under the facts in this case, this appeal has not lost its force.

There may be opinions of this court in other cases in which some of the language used is in apparent conflict with the rule declared in *Collier v. Coggins, supra,* but those opinions must be read, and the language used in them must be interpreted, in the light of the facts to which the language was applied.—*Rawls v. Doe ex dem. Kennedy,* 23 Ala. 240, 48 Am. Dec. 289; *Realty Investment Co. v. City of Mobile,* 181 Ala. 184, 61 South. 248.

3. If, after the appeal in this case was perfected by the filing of the signed bill of exceptions with the clerk of the trial court a call of the defendant's division had occurred and the transcript had not been filed during that call, a different question would be presented to us for our determination.

The motion to dismiss this appeal is overruled. All the Justices concur.

McCLELLAN, J. — (concurring.) — This appeal, sought to be dismissed on the Attorney General's mo-

tion, was taken during, and the appeal was returnable to, the 1911-12 term of the Supreme Court. The appeal was not docketed during that term. It was docketed January 13, 1913. The only possible theory upon which the denial of the motion to dismiss the appeal may be rested is to give rule 42 (Civil Code 1907, p. 1517) the effect of *supplementing* Code (1907) § 2870; (1886) § 3620; (1896) § 437. This rule (46) was adopted February 10, 1894. By the Code of 1886, § 675, subdiv. 4, the Supreme Court was authorized "to establish rules of practice in such court, and all other courts of record in this state." See, also, in this connection, Code (1886) § 3610, authorizing the making, etc., of rules for the chancery courts. It will be noted that subdivision 4 (ante) does not, as is now the case (Code 1907, § 5955; Code 1896, § 3826), affirmatively restrict this rule power to exercise "not contrary to the provisions of this Code." So, doubtless, the phrase, "unless otherwise provided," occurring in section 3820 of the then Code (1886), was interpreted, by this court in adopting, in 1894, rule 46, Code 1896, p. 1195, as comprehending provisions otherwise afforded by *rule of court.* Certainly, if Code, § 2870, was all the positive law on the subject (and patently it is unless rule 46 supplements it), *legal cause for discontinuance would* intervene if an appeal returnable under the provisions of Code, § 2870, during a term was not docketed before the adjournment of that term; and if so, the reasoning and authority of the Court of Appeals in *Swain v. State,* 7 Ala. App. 5, 60 South. 961, would be conclusive in favor of the motion to dismiss. Nowhere in our law is there basis for the view that distinction has existed, or now exists, between civil and criminal appeals as respects the return time thereof or legal cause of discontinuance thereof. The right of appeal, or the effect-

uation of an appeal, in civil or criminal cases depends in no wise upon a bill of exceptions. As is universally understood, in both classes of cases the right of appeal exists and may be effected without a bill of exceptions. Bills of exceptions are, when properly signed, a part of the record of the appellate court only, and are almost invariably prepared and signed *after the appeal has been taken.—Decatur Water W. Co. v. Foster,* 161 Ala. 176, 49 South. 759. Hence Code (1907) § 6255, is without any bearing upon, or relation to, the question the motion here raises. Sentimental considerations, however worthily inspired or entertained, are not factors. When the right of appeal exists and when an appeal is returnable are questions of law, determinable alone by reference to positive law, as the Court of Appeals points out in the Swain opinion. This positive law, as here involved, must be found in Code, § 2870, and rule 46. This rule confers no right upon an appellant, but it does vest in the appellate court a *discretion* when the question of discontinuance is seasonably raised by the appellee, and, accordingly, deprives an appellee, who seasonably moves dismissal, of the unqualified *right* to have the *legal cause of discontinuance* made effective by a dismissal, as was the practice illustrated in *Winthrow v. Woodward Iron Co.,* 81 Ala. 100, 2 South. 92; *Sears v. Kirksey,* 81 Ala. 98, 2 South. 90, cited in the Swain opinion. Rule 46, in connection with Code, § 2870, establishes this practice: That the clerk shall not docket an appeal or file a transcript where there has been delay to docket or file during the term to which the appeal was returnable (section 2870) *until the court has determined, within* its discretion established by rule 46, "to permit the transcript to be filed and the cause docketed, for the first time, after the adjournment of the term to or during which the appeal is returnable." The

*permission* of the court is the condition precedent, established by the rule, for filing and docketing in the cases the rule describes. Without such *permit* filing and docketing should not be made by the clerk.

Aside from the considerations, and to certainly avert the hazard of an unfavorable exercise of the *discretion* rule 46 allows, *the careful practitioner in the appellate courts will, under the present practice, file his certificate of appeal during the return term and have the appeal docketed.* By so doing, the issue of excusable delay vel non. under rule 46, will be, in most cases, entirely eliminated. The court, before adjournment for the term, always enters an appropriate order of continuance of pending matters.

## ON THE MERITS.

Cleve Campbell, Bud McClain, and the appellant were jointly indicted for the murder of Marcella Lutes. After severance, the appellant was convicted and sentenced to life imprisonment.

There was evidence tending to show appellant's guilt of the homicide alleged, and justifying the court in refusing the affirmative charge requested for him.

While there is argument in the brief for appellant asserting error in overruling a motion for change of venue, no such motion, or ruling thereon, appears in the bill.

Mr. and Mrs. Lutes, elderly people, were found dead in their home on Thursday, November 9, 1911. They had been slain by blows upon their heads. They were, according to the record, last known to be alive on Monday afternoon, November 6, 1911. The motive appears to have been robbery. There is evidence in the bill of exceptions tending to show that defendant was concern-

ed in their murder. He denied all knowledge of, or concern in, the killing, and asserted in the evidence introduced in his behalf that on the nights of November 6th and 7th he was at home, approximately eight miles from the scene of the tragedy. There appears in the bill 13 adverse (to him) rulings in respect of the evidence. Several of these rulings adverse to defendant lead his counsel to contend that the testimony admitted, as in support of the state's theory of conspiracy between the three jointly indicted, was illegally admitted, for that there was then no evidence establishing, prima facie, a conspiracy in such sort as to admit declarations of another whose declarations were only admissible in consequence of a conspiracy established, at least prima facie. The insistence cannot prevail, since there was evidence showing, prima facie, the existence of such relation between the parties jointly indicted.

The state introduced Mr. Wade, a minister, who testified that on Wednesday, November 8, 1911, his horse appeared to have been taken from his stable, and ridden some time between Monday evening, November 6, 1911, and Wednesday aforesaid. Over defendant's objection the court allowed this evidence to go to the jury, subject to the condition that the state latterly connect the use of the animal by the defendant. The bill does contain testimony tending to show that defendant was the person who used the minister's horse. There was no error in respect of the admission of the testimony in this connection.

John McLemore, a witness for the state, testified to a certain conversation with the defendant which tended to show expressions, by defendant, at least susceptible of an incriminatory interpretation.

Luther Baggett, called by the state, testified to circumstances tending to corroborate McLemore in respect

of the presence, together, of defendant and McLemore at a place where McLemore had testified the conversation occurred. Manifestly this testimony of Baggett was relevant and admissible.

The question, to McLemore, upon his recall to the stand, in response to which he testified that he knew what defendant meant when he (defendant) asked whether McLemore "had said anything about what Bud told" him (McLemore), could not have been, even if improper, of prejudice to defendant on his trial. There was no effort or offer by the state to then go further and show what McLemore knew or understood in that connection.

The questions propounded to Joe Baldwin on cross-examination, by defendant's counsel, which sought to affect the credibility of the witness by showing his indictment for, not conviction of, an offense involving moral turpitude, were properly disallowed.—*Watson v. State,* 155 Ala. 9, 13, 46 South. 232; *Ross v. State,* 139 Ala. 144, 36 South. 718.

Special charges A, C, F and G each conclude to an acquittal upon a hypothesis that justified that result without a due consideration by the jury of all of the evidence on the issue of guilt vel non. They were well refused to defendant.—*Bardin v. State,* 143 Ala. 74, 38 South. 833; *Hurd v. State,* 94 Ala. 100, 10 South. 528.

Special charge B, refused to defendant, is a duplicate of given charge 5.

Special charge D was rendered faulty by the omission to hypothesize, and to exclude thereby defendant's concern in the homicide as a co-conspirator. Under this theory of the state, according to the evidence, he might have been a guilty agent without striking a blow or otherwise actually participating in the killing.—*Jones v. State,* 174 Ala. 31, 57 South. 31.

The court cannot be put in error for refusing special charges affirming that there is no evidence in support or in refutation of an issue, or elements of issues, involved on a trial.   Charge E, refused to defendant, was of this class.

Charge H is a duplicate of charge 1, given at defendant's instance.

Charges I and K exact too high a degree of conviction of guilt in the minds of the jury.   They were properly refused.

Charge J is abstract.

Charge N is confused. It does not clearly state an applicable principle of law.   Its refusal was proper.

Similar instructions to charge O have been repeatedly condemned.

Refused charge P is a duplicate of given charge 10.

No error appearing, the judgment is affirmed.

Affirmed.   All the Justices concur, except DOWDELL, C. J., not sitting.